**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0349-25

IN THE MATTER OF BID
SOLICITATION #25DPP01134
JLN SERVICES, LLC, PROTEST
OF NOTICE OF INTENT TO
AWARD T0777—SNOW
PLOWING AND SPREADING
SERVICES—NJDOT.

_____

Submitted May 6, 2026 – Decided July 13, 2026

Before Judges Currier and Jablonski.

On appeal from the New Jersey Department of Transportation.

Trif & Modugno LLC, attorneys for appellant Jerrell's Landscapes & Nurseries, Inc. (Kyle H. Cassidy, of counsel and on the briefs).

Jennifer Davenport, Attorney General, attorney for respondent Department of the Treasury, Division of Purchase and Property (Sookie Bae-Park, Assistant Attorney General, of counsel; Molly L. Case, Deputy Attorney General, on the brief).

PER CURIAM

Appellant submitted a bid in response to a solicitation for snow plowing and spreading services on state highways and interstates. Appellant received a notice of intent (NOI) to award a contract. However, after appellant failed to present the requisite equipment for inspection by the New Jersey Department of Transportation (NJDOT), the NOI award was rescinded. After reviewing appellant's contentions in light of the record and applicable principles of law, we affirm.

I.

In January 2025, the Department of the Treasury, Division of Purchase and Property (agency) issued Bid Solicitation #25DPP01134, on behalf of the NJDOT. "The purpose of the Bid Solicitation was to solicit [q]uotes for snow plowing and spreading services on all State interstates and highways under the jurisdiction of the NJDOT." The solicitation gave first preference to bidders who proposed to provide their own equipment, over those intending to use NJDOT's. In April 2025, appellant JLN Services LLC submitted a bid in response to the agency's solicitation.

2

NJDOT issued an NOI award letter to JLN for price lines[1] 307, 310, and 311 on June 27, 2025. Approximately two weeks later, on July 11, 2025, the agency also named JLN as the intended awardee for line 240.

On July 17, 2025, NJDOT sent JLN a letter to schedule an inspection of the trucks and plows they intended to use to perform the contract work for lines 307, 310, and 311. An attachment to the letter listed how many trucks must be presented for each delineated price line. The letter advised JLN that "[a]t the time of the inspection, each vehicle and equipment must be physically on site and presented with a valid vehicle registration." The letter further stated that the "[f]ailure to comply . . . or presenting fewer than listed number of trucks and equipment may result in the termination of the affected Bid Solicitation [p]rice [l]ines." NJDOT and JLN scheduled the inspection to be performed at JLN's New Jersey facility on July 22, 2025.

On the date of the inspection, JLN did not have all of its plows physically present at its facility. JLN contends it informed NJDOT that twelve of its plows were located at a facility in Pennsylvania and NJDOT could inspect them there.

---

[1] The term "Price Line" is not formally defined in the Bid Solicitation, but is understood as referring to a distinct snow plowing or spreading service assignment. Each price line corresponds to a specific portion of interstate or highway under the jurisdiction of the NJDOT, for which the price line awardee would be responsible for in a snow event.

The parties dispute the substance of the ensuing conversation between them that day.

On July 30, 2025, NJDOT issued another notice of inspection to JLN, this time for line 240. The inspection occurred on August 2, 2025. JLN did not have all of the requisite plows at its New Jersey facility on that day either.

On September 4, 2025, NJDOT issued a revised recommendation report advising the agency to rescind JLN's intended award under "N.J.A.C. 17:12-2.7(h) for failing to provide the required equipment within the time established for inspections." As a result, on September 5, the agency implemented the recommendation and issued a revised NOI to award letter, rescinding its prior intent to award JLN lines 240, 310, and 311. On September 10, 2025, JLN submitted a formal protest challenging the recission of the NOI award.

On September 12, the agency issued a final agency decision affirming the revised September NOI rescinding the intended award to JLN for lines 240, 310, and 311. The agency stated that although "JLN presented trucks for all lines inspected, [it] failed to provide plows, therefore NJDOT could not ascertain if JLN possessed the equipment necessary to service the lines awarded."

The agency further advised that

> [i]nspections of equipment are set forth . . . in Bid
> Solicitation Section 8.7 State's Right to Inspect Bidder's

A-0349-25

Facilities, and Bid Solicitation Section 4.12.2 Equipment Inspections, both of which state that all bidders' facilities, vehicles, and equipment, whether provided by the Contractor or the NJDOT, shall be subject to inspection to ensure the bidder can perform the contract. The NJDOT Letter advised JLN that the NJDOT needed to inspect the equipment of JLN and any approved subcontractors they were intending to use for [p]rice [l]ines 307, 310, and 311. JLN's argument regarding facilities is akin to a manufacturer bidding on work to manufacture parts, and arguing it can perform the contract because it owns a building that fails to contain any manufacturing equipment. JLN was provided with abundant notice in the Bid Solicitation, . . . that if it chose to bid 1st Preference, then it would need to provide its equipment, including plows, for inspection.

The agency's decision continued, stating

JLN was provided with ample opportunities to present its equipment to satisfy the inspection requirements on a date of its choosing, and at its own facility, to which JLN affirmatively scheduled two inspection dates that were attended by . . . NJDOT. On July 22, 2025, eleven (11) trucks were inspected, and only five (5) were fitted with plows. On August 2, 2025, six (6) trucks were inspected without any plows. While JLN's Protest states that it stands willing to make the required equipment available, it had two opportunities on dates agreed to by JLN to present the equipment when NJDOT inspectors were at its facility. In the letter to JLN dated July 17 2025, ("NJDOT Letter") NJDOT confirmed to JLN that they were the intended awardee under the Bid Solicitation of [p]rice [l]ines 307, 310, and 311, and that an [e]quipment [i]nspection would be conducted "of all trucks and snow plowing equipment. At the time of the inspection, each vehicle and

5

equipment must be physically on site and presented with a valid vehicle registration." . . . Finally, the NJDOT Letter referred to the [p]rice [l]ines, preferences, and number of trucks that had been awarded to JLN. JLN provided no objection to the required inspection, and did not provide opposition to the requirement to present the required equipment for inspection. Further, NJDOT was clear in the correspondence about its expectations for the inspection—JLN would present all trucks and plows, and the failure to present the required equipment may result in the termination of the awarded [p]rice [l]ines.

NJDOT met with JLN at their facility on July 22, 2025, and August 2, 2025. JLN failed to present the required equipment for inspection at that time despite the multiple notifications in the Bid Solicitation, NJDOT Letter, and phone calls that the equipment would need to be presented for inspection to ensure JLN had the equipment it indicated it possessed by bidding [first] Preference in its [q]uote. Thereafter[,] NJDOT requested JLN's lines be rescinded in accordance with the Bid Solicitation's requirements. Without a physical inspection of equipment as permitted by the Bid Solicitation, the State cannot be sure that a bidder possesses the correct quantity of trucks, that those trucks are of the proper class as required pursuant to the [p]rice [l]ines in the Bid Solicitation and that the equipment is mechanically sound, in good working order and, capable of performing all tasks required under the Bid Solicitation. Without the inspection of equipment, the State cannot be assured "that the contract will be entered into, performed and guaranteed according to its specified requirements" as required pursuant to River Vale.[2]

---

[2] River Vale Twp. v. R.J. Longo Const. Co., 127 N.J. Super. 207, 216 (Law Div. 1974).

> For a contract that impacts the public's health, safety, and welfare significantly, the [agency's] and NJDOT's inspection process is a reasonable action to guarantee that its awarded contractors will be able to complete the required work and are in possession of the required equipment.
>
> [(Citation reformatted).]

On September 26, 2025, JLN applied to the Appellate Division seeking leave to file an emergent motion to stay the agency decision. The motion was granted and the September 12, 2025 final agency decision was temporarily stayed. On October 2, 2025, by final order on emergent application, we denied JLN's request for a stay pending appeal. JLN now appeals from the September 12, 2025 final agency decision.

## II.

On appeal, appellant asserts the agency did not have the authority to rescind the pre-contract award, and its actions were arbitrary, capricious and unreasonable. JLN further contends the agency erred in relying on Bid Solicitation Section 4.12.2 to require an inspection and improperly relied on Section 8.7 as a basis to perform the inspection of its equipment.

Our review of quasi-judicial agency determinations is limited. Allstars Auto. Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (citing Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)). We

7

"review[] agency decisions under an arbitrary and capricious standard." Zimmerman v. Sussex Cnty. Educ. Servs. Comm'n, 237 N.J. 465, 475 (2019).

Our judicial role in reviewing administrative action is generally limited to three inquiries:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars Auto. Grp., 234 N.J. at 157 (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

In addition, we defer to an administrative agency's "technical expertise, its superior knowledge of its subject matter area, and its fact-finding role." Messick v. Bd. of Rev., 420 N.J. Super. 321, 325 (App. Div. 2011). This deference, however, "is only as compelling as is the expertise of the agency, and this generally only in technical matters which lie within its special competence." Application of Boardwalk Regency Corp. for a Casino License, 180 N.J. Super. 324, 333 (App. Div. 1981).

As we have stated, "[p]ublic bidding statutes exist for the benefit of taxpayers, not bidders, and should be construed with sole reference to the public

A-0349-25

good." Borough of Princeton v. Bd. of Chosen Freeholders of Cnty. of Mercer, 169 N.J. 135, 159-60 (2001) (alternation in original) (citing Nat'l Waste Recycling, Inc. v. Middlesex Cnty. Imp. Auth., 150 N.J. 209, 220 (1997)).

III.

The central issues before this court are (1) whether NJDOT was authorized under the Bid Solicitation documents to require appellant to present for inspection the equipment necessary to perform the snow plowing services; and (2) if appellant failed to comply with the inspection requirement, whether the agency was permitted to rescind the NOI to award the contract. Our answer is yes to both questions.

In both letters sent to appellant in July 2025, NJDOT delineated its intention to inspect all trucks and snow plowing equipment pursuant to Bid Solicitations Sections 4.4.1 and 4.12.2. Section 4.4.1 (Driver/Operator Requirements) is not pertinent to the analysis as it lays out the requirements for contractors regarding their drivers. It does not define NJDOT's authority to conduct pre-contract inspections.

Section 4.12.2 (Equipment Inspections), states that:

> All vehicles and equipment, whether provided by the
> Contractor or the NJDOT, shall be subject to inspection
> at any time during the [c]ontract term and/or a Call-Out.
> If the inspection reveals that any of the vehicles and/or

9

equipment fail to comply with the requirements of the Bid Solicitation, including but not limited to Section 4.12.1, then that respective vehicle and/or equipment will not be permitted to operate.

Outside of the usual NJDOT inspections provided for each Call-Out, a Contractor may request an equipment inspection by NJDOT staff. It is not guaranteed that the NJDOT will respond to the request, and the Contractor is still expected to have the required equipment, properly equipped before the commencement of the Winter Season beginning October 1st.

[(Emphasis added).]

A "Call-Out" is defined in the Bid Solicitation documents as a "[t]elephone call from the NJDOT informing the Contractor to report for Operations at the [location assigned by NJDOT] at a specified time." The requested inspections did not occur during a Call-Out, therefore this provision is not applicable here.

As for an inspection during a contract term, the contractor was expected to provide services during the winter season period, defined as October 1 through April 30 of each year of the contractual term. Accordingly, after considering the plain language of Section 4.12.2, we agree it does not provide NJDOT with specific authority to conduct the requested inspection.

However, our analysis does not end there. The Bid Solicitation documents contain a provision that authorizes the State to inspect the Bidder's equipment.

10

Furthermore, appellant was explicitly notified in the July 2025 letters of the requirement for an inspection to which they did not object.

Bid Solicitation Section 8.7 (State's Right To Inspect Bidder's Facilities) provides that "[t]he State reserves the right to inspect the Bidder's establishment before making an award, for the purposes of ascertaining whether the Bidder has the necessary facilities for performing the [c]ontract."  Appellant contends the terms "establishment" and "facilities" do not include vehicles and equipment. Conversely, the agency asserts that if appellant's interpretation of Section 8.7 were adopted, the provision would be rendered meaningless, as buildings and property alone are insufficient to perform the contractual snow plowing services.

"To determine the meaning of the terms of an agreement by the objective manifestations of the parties' intent, the terms of [a] contract must be given their 'plain and ordinary meaning.'"  Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997) (quoting Kaufman v. Provident Life and Cas. Ins. Co., 828 F. Supp. 275, 283 (D.N.J. 1992)).  "A writing is interpreted as a whole and all writings forming part of the same transaction are interpreted together."  Ibid. (quoting Barco Urb. Renewal Corp. v. Hous. Auth. of Atl. City, 674 F.2d 1001, 1009 (3d Cir. 1982)) (citing Restatement (Second) of Conts. § 202(2) (A.L.I.1981)).  We examine the document as a whole and do not "torture the

language . . . to create ambiguity." Ibid. (quoting Stiefel v. Bayly, Martin & Fay of Conn., Inc., 242 N.J. Super. 643, 651 (App. Div. 1990)).

Appellant cannot sustain its argument regarding its reading of Section 8.7. An inspection to ascertain "whether the Bidder has the necessary facilities for performing the [c]ontract" is to ensure the bidder has the necessary and sufficient equipment to plow snow on all the price lines included in the NOI award. An inspection limited solely to the bidder's physical building would be fruitless in accomplishing the obvious purpose: that the bidder has the equipment needed to perform the awarded work. Section 8.7 also provides the right for the inspection "before making an award." The purpose of the section is for NJDOT to evaluate, before the contract is awarded, whether the bidder can perform the necessary work under the contract to be awarded. As our Supreme Court has stated, "[w]ords and phrases in a statute should not be read in isolation," but instead "[courts] read them in context, along 'with related provisions[,] . . . to give sense to the legislation as a whole.'" State v. A.M., 252 N.J. 432, 451 (2023) (third alteration and omission in original) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). We are satisfied the agency and NJDOT had the authority to conduct a pre-contract inspection of appellant's equipment under Section 8.7 of the Bid Solicitation documents.

Moreover, the July 2025 letters clearly stated what appellant needed to produce and what NJDOT needed to see to finalize the contract award. As detailed above, the letter specified NJDOT intended to inspect all of appellant's trucks and snow plowing equipment and the failure to present anything less would result in the rescission of the awarded price lines. Appellant did not object to the inspections. They simply did not comply with the essential requirement of satisfying NJDOT's request for inspection to ensure they had sufficient equipment to perform the contractual snow plowing services.

In sum, the agency and NJDOT relied on the Bid Solicitation documents to conduct an inspection of appellant's equipment needed to perform the contracted services. After the inspections, the agency determined appellant did not present the necessary plows to fulfill the contract requirements under the Bid Solicitation. As a result, the agency rescinded the awarded price lines.

Appellant has not demonstrated the agency's determination was arbitrary, capricious or unreasonable. The agency explained its reasoning in its comprehensive final decision, concluding that "[f]or a contract that impacts the public's health, safety, and welfare significantly, the [agency] and NJDOT's inspection process is a reasonable action to guarantee that its awarded contractors will be able to complete the required work and are in possession of

13

the required equipment."  Here, the State and the public had a substantial interest in implementing these snow plowing contracts for its approximately 13,000 lane-miles of roadways as quickly as possible to ensure there would be snow plowing services in place at the time of the first snowfall.

To the extent we have not addressed any of appellant's remaining arguments, we have deemed them of insufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0349-25